B

Case 3:08-cv-01431-MMC    Document 8    Filed 04/21/2008    Page 1 of 8

Westlaw.

219 A.2d 505 Page 1
47 N.J. 92, 219 A.2d 505
**(Cite as: 47 N.J. 92, 219 A.2d 505)**

▷Falcone v. Middlesex County Medical Soc.,
N.J. 1966.

Supreme Court of New Jersey.
Italo J. FALCONE, Plaintiff-Appellant and
Cross-Respondent,
v.
MIDDLESEX COUNTY MEDICAL SOCIETY,
Defendant-Respondent and Cross-Appellant.
No. A-94.

Argued March 8, 1966.
Decided May 2, 1966.

Physician's action against county medical society and hospitals for damages. The Superior Court, Law Division, 82 N.J.Super. 133, 196 A.2d 808, granted summary judgment in part and the physician appealed. The Superior Court, Appellate Division, 87 N.J.Super. 486, 210 A.2d 78, affirmed and cross-petitions for certification were granted. The Supreme Court held that physician who brought action to compel his admission to county medical society and who received that relief in full, was precluded by the 'single controversy' doctrine to assert for the first time in another suit that he was also entitled to incidental or related damages for the period prior to his admission.

Judgment of Appellate Division reversed in accordance with opinion, and in other respects affirmed.

West Headnotes

**Judgment 228** ⚷**592**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k591 Splitting Cause of Action
                228k592 k. Single and Entire Causes of Action. Most Cited Cases
Physician, who brought action to compel his admission to county medical society and who received that relief in full, was precluded by the "single controversy", doctrine to assert for the first time in another suit that he was also entitled to incidental or related damages for the period prior to his admission.

*92**505 Edward G. D'Alessandro, Newark, for plaintiff-appellant and cross-respondent (Friedman & D'Alessandro, Newark, attorneys, Louis M. Minotti, Newark, on the brief).
*93 John E. Toolan, Perth Amboy, for defendant-respondent and cross-appellant (Toolan, Haney & Romond, Perth Amboy, attorneys).
PER CURIAM.
The Appellate Division (87 N.J.Super. 486, 210 A.2d 78 (1965)) affirmed a judgment of the Law Division (82 N.J.Super. 133, 196 A.2d 808 (1964)) which granted the defendant's motion for summary judgment but only partially. We granted cross petitions for certification. 45 N.J. 591, 214 A.2d 29 (1965).

On September 22, 1958 Dr. Falcone instituted a proceeding in the Law Division to compel his admission to the Middlesex County Medical Society. After trial, he obtained a judgment dated July 21, 1960 granting the relief he sought. 62 N.J.Super. 184, 162 A.2d 324. On appeal, we affirmed. 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952. Our opinion was filed on May 8, 1961 and, apparently acting in due course after its summer recess, the Middlesex County Medical Society admitted Dr. Falcone to full membership in September 1961. At no point during the course of the litigation had Dr. Falcone asserted any claim for money damages against the Society. If he had wished to assert any such claim it could readily have been set forth in his complaint. See Garrou v. Teaneck Tryon Co., 11 N.J. 294, 304-305, 94 A.2d 332, 35 A.L.R.2d 1125 (1953); Steiner v. Stein, 2 N.J. 367, 373-374, 66 A.2d 719 (1949). And under the 'single controversy' doctrine which our cases have repeatedly applied, it should have been so set forth. She Ajamian v. Schlanger, 14 N.J. 483, 103 A.2d 9, certiorari denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Applestein v. United Board & Carton Corp., 35 N.J. 343, 356, 173 A.2d 225 (1961); **506 Thatcher v. Jerry O'Mahony, Inc., 39 N.J.Super. 330, 335, 121 A.2d 50 (App.Div.1956). See also Silverstein v. Abco Vending Service, 37 N.J.Super. 439, 117 A.2d 527 (App.Div.1955):

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 A.2d 505 Page 2
47 N.J. 92, 219 A.2d 505
**(Cite as: 47 N.J. 92, 219 A.2d 505)**

'Since Ajamian v. Schlanger, 14 N.J. 483, 103 A.2d 9 (1954), there remains no basis to misapprehend that the courts of this state are determined to enforce the prime aim of the new practice for '* * * the just and expeditious determination In a single action of the ultimate merits of an entire controversy between litigants' (Id., 14 N.J., at page 485, 103 A.2d at page 10);Massari v. Einsiedler, 6 N.J. 303, 307-309, 78 A.2d 572 (1951); cf. *94New Jersey Highway Authority v. Renner, 18 N.J. 485, 492, 114 A.2d 555 (1955). (Emphasis supplied) 'The piecemeal litigation of fragments of a single controversy is too evident an evil to remain unchecked', within present-day philosophies as to the efficient functioning of litigation.'37 N.J.Super., at p. 449, 117 A.2d at p. 532.

If Dr. Falcone had asserted a claim for money damages along with his claim for admission, the Society might well have chosen a different course or our decision might well have been made prospective. See State v. Smith, 32 N.J. 501, 558, 161 A.2d 520 (1960) (concurring opinion), certiorari denied364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961); Ekalo v. Constructive Service Corp. of America, 46 N.J. 82, 95, 215 A.2d 1 (1965); cf. Levy, 'Realist Jurisprudence and Prospective Overruling,' 109 U.Pa.L.Rev. 1 (1960); Currier, 'Time and Change in Judge-Made Law: Prospective Overruling,'51 Va.L.Rev. 201 (1965). In any event, elemental considerations of fairness to the other party and the urgent need for eliminating the delay and wastage incident to the fragmentation of litigation dictated that all of the aspects of the plaintiff's controversy with the defendant be included within his legal proceeding. See 2 Schnitzer and Wildstein, New Jersey Rules Service A-IV-933 et seq. (1957).

The Appellate Division properly recognized the mandatory nature of the single controversy doctrine in contrast to the permissive terms of R.R. 4:31-1 which deals with the joinder of independent or alternate claims.87 N.J.Super., at pp. 490-491,210 A.2d 78. But it took the position that, while the plaintiff was barred by the single controversy doctrine from asserting a claim for damages for any period prior to the Law Division's judgment in 1960, he was not barred with respect to the period between the Law Division's decision in 1960 and his admission to membership in 1961. We find no basis for this fragmentation of the litigation. The controversy between Dr. Falcone and the Society was clearly single in nature and did not end with the Law Division's judgment in 1960. That judgment was but an interim step in the proceeding, for the defendant had the undoubted right to take a timely appeal *95 and to prosecute it to conclusion. When our decision on the appeal was handed down in 1961, the controversy came to a close and Dr. Falcone was duly admitted to membership. Under any fair interpretation of the single controversy doctrine, Dr. Falcone, having sought only admission to membership and having received that relief in full, could not thereafter be heard to assert for the first time that he was also entitled to incidental or related damages for some period prior to his admission.

The judgment of the Appellate Division is reversed insofar as it permitted the assertion of a claim for damages for the time between the Law Division's judgment in 1960 and the plaintiff's admission to membership in 1961; in other respects it is affirmed.

For affirmance in part and reversal in part: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO-6.
Opposed: None.
N.J. 1966.
Falcone v. Middlesex County Medical Soc.
47 N.J. 92, 219 A.2d 505

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

**Westlaw.**

835 A.2d 1257  
364 N.J.Super. 351, 835 A.2d 1257  
**(Cite as: 364 N.J.Super. 351, 835 A.2d 1257)**

Page 1

CIrish Pub v. Stover  
N.J.Super.A.D.,2003.

Superior Court of New Jersey, Appellate Division.  
IRISH PUB, Richard Burke and Cathy Burke, Plaintiffs-Appellants,  
v.  
Rachelle STOVER, Defendant-Respondent.  
Argued Oct. 22, 2003.  
Decided Nov. 26, 2003.

Under consent decree resolving property dispute between owner of pub and owner of hotel, owner of pub brought motion for redress for current alleged violation on provision of order concerning language on sign. The Superior Court, Law Division, Atlantic County, dismissed motion under entire-controversy doctrine. Owner of pub appealed. The Superior Court, Appellate Division, Lisa, J.A.D., held that motion regarding sign was not barred under entire-controversy doctrine.

Reversed and remanded.

West Headnotes

**[1] Judgment 228** ⚷**592**

228 Judgment  
    228XIII Merger and Bar of Causes of Action and Defenses  
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded  
            228k591 Splitting Cause of Action  
                228k592 k. Single and Entire Causes of Action. Most Cited Cases  
Pub owner's motion to enforce provision of consent decree concerning language on sign behind adjoining hotel was not barred under entire-controversy doctrine, although owner had filed, and subsequently withdrawn, prior motion to enforce another provision that prohibited both parties from making complaints to any governmental agency without first notifying the other party; prior motion was not a "claim" in lawsuit between parties settled by consent decree, but was brought in aid of pub owner's rights as litigant. R. 1:10-3, R. 4:30A.

**[2] Judgment 228** ⚷**592**

228 Judgment  
    228XIII Merger and Bar of Causes of Action and Defenses  
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded  
            228k591 Splitting Cause of Action  
                228k592 k. Single and Entire Causes of Action. Most Cited Cases  
The entire-controversy doctrine does not apply to post-judgment motions to enforce litigant's rights. R. 1:10-3, R. 4:30A.

**\*\*1257\*352** Edwin J. Jacobs, Jr., Atlantic City, argued the cause for appellants (Jacobs & Barbone, attorneys; Mr. Jacobs, of counsel; Arthur J. Murray, on the brief).  
Richard F. DeLucry, Atlantic City, argued the cause for respondent (Sandson & DeLucry, attorneys; Mr. DeLucry, on the brief).

**\*\*1258** Before Judges KING, LISA and KIMMELMAN.

The opinion of the court was delivered by  
LISA, J.A.D.  
This appeal raises a novel issue: Does the entire controversy doctrine bar a post-judgment motion to enforce an order, where the party seeking enforcement has brought a prior post-judgment motion to enforce some other aspect of the same order, and where the party seeking enforcement knew about both alleged violations of the order when the first motion was filed? The motion judge concluded the doctrine applied and granted summary judgment dismissing appellants' motion for relief in aid of litigant's rights. We reverse.

The parties are adjoining commercial landowners in Atlantic City. Plaintiffs are the Irish Pub and its owners, Richard and Cathy Burke (Burke). The Irish Pub is located on St. James Place. Defendant is Rachelle Stover, who maintains The Brunswick Hotel (The Brunswick), a rooming house also on St. James Place. The Brunswick is located behind a parking lot maintained by Burke.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

835 A.2d 1257 \
364 N.J.Super. 351, 835 A.2d 1257 \
**(Cite as: 364 N.J.Super. 351, 835 A.2d 1257)**

Page 2

Since 1994, various disputes have arisen between the parties, with each side making allegations of business and property interference by the other. These allegations, not relevant here, led to a lawsuit, commenced in 1994, and resolved by a consent order in *353 1996. In 1998, continuing disputes prompted both parties to move for enforcement of provisions in the consent order. *R.* 1:10-3. The parties again resolved the matter, resulting in the entry of a revised consent order in 1999. Both orders provided that the court would retain jurisdiction for enforcement.

On April 11, 2001, Burke filed a motion in aid of litigant's rights claiming Stover violated a provision in the consent order, which prohibited both parties from making complaints to any governmental agency without first notifying the other party. The parties amicably resolved this dispute and in August 2001, Burke's attorney advised the court the motion was withdrawn.

On October 31, 2001, Burke filed another motion, seeking redress for the alleged violation of a provision in the current order pertaining to a sign located at the rear of The Brunswick. The order required Stover to change within twenty days the language on the sign to read "Enter on" St. James Place and eliminate the words "Come to." The order provided for attorney's fees and a $150 per day fine for a violation of the sign provision.

Burke moved for and was granted post-judgment discovery under *Rule* 4:24-3. Stover moved for summary judgment to dismiss Burke's motion for relief in aid of litigant's rights, asserting various grounds, including waiver or satisfaction and accord (because of the terms of the August 2001 settlement), laches, equitable estoppel and the entire controversy doctrine. The motion judge granted Stover's motion, dismissing Burke's motion to enforce the sign provision. The judge based his decision solely on the entire controversy doctrine, stating "I think that the spirit of the entire controversy doctrine is such that parties who have claims against each other are required to bring them in one proceeding. And, that they can't separate them out and decide to bring one claim and another claim at another time."

The judge recognized there were no cases applying the entire controversy doctrine to post-judgment proceedings. He said:

Here it's clear that Mrs. Burke knew that there was a violation of the agreement with respect to the sign 20 days after the agreement was entered into. I suspect *354 that [Burke's counsel] is **1259 probably right that maybe she didn't think it was such a big deal ... at that point. And, they had just finished litigation and ... they had gone through years of this. I'll call it silliness, but they've gone through years of this silliness and maybe she just didn't want to start up again.

But certainly she knew in April of 2001 that the sign issue was out there. And, I disagree with the ... proposition that knowing that that issue was there that she has the right to say well I'm not going to assert that one now. There's another one that I want to do first and then I'll do the sign issue later. I think that that clearly violates the ... spirit of the entire controversy doctrine. And, I don't think that parties ought to be able to do that. That is[,] prolong litigation, pick and choose when you want to bring them.

And, I think that that holds true for post judgment issues as well as prejudgment issues.

We disagree.

[1]*Rule* 4:30A provides:

Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64-5 (foreclosure actions) and *R.* 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

In this case, the question is whether the entire controversy doctrine required Burke to seek enforcement of the alleged sign violation at the time of the April 2001 motion. Stated differently, the question is whether Burke's decision to separately seek this relief constituted non-joinder of a "claim" for *Rule* 4:30A purposes.

The Supreme Court recently discussed the entire controversy doctrine in *K-Land Corp. # 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 800 A.2d 861 (2002). K-Land sought reimbursement from the Landis

835 A.2d 1257  
364 N.J.Super. 351, 835 A.2d 1257  
**(Cite as: 364 N.J.Super. 351, 835 A.2d 1257)**

Page 3

Sewerage Authority for money spent to construct a sewer system force main the Authority would operate for the benefit of K-Land and other property owners. The trial judge held the entire controversy doctrine barred K-Land's suit, because K-Land should have brought the claims in a declaratory judgment action it instituted twenty months earlier. We affirmed. 173 N.J. at 60-69, 800 A.2d 861.

The Supreme Court reversed. The Court quoted Judge Pressler's comment to *R.*4:30A:

The entire controversy doctrine, an equitable preclusionary doctrine whose purposes are to encourage comprehensive and conclusive litigation determinations, to *355 avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency, was originally conceived of as a claim-joinder mandate, requiring all parties in an action to raise in that action all **transactionally related** claims each had against any other whether assertible by complaint, counterclaim, or cross-claim.... Although the court rules had not initially contained any provision expressly referring to the entire controversy doctrine, *R.* 4:27-1(b) was added to the rule governing joinder of claims effective September 1979 to provide for mandatory joinder of claims under the doctrine, which, however, was undefined, it having been then and remains still the Supreme Court's view that development of the substantive content of the doctrine is best left to case law.

....

The rule as to claim joinder continues to require, as a general matter, that all aspects of the controversy between those who are parties to the litigation be included in a single action.

**1260 ....

[T]he equitable nature of the doctrine[ ] bar[s] its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency.

....

*Nor does the doctrine apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action.*

[*K-Land, supra,* 173 N.J. at 70, 800 A.2d 861 (quoting Pressler, *Current N.J. Court Rules,* Comments 1 and 2 on *R.*4:30A (2002)).]

The Court referred to the elucidation of the doctrine in *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C.,* 321 N.J.Super. 275, 728 A.2d 857 (App.Div.1999), where we acknowledged the doctrine's equitable origins:

Although the explicit wording of the rule governing the mandatory joinder of claims has remained unchanged, the Court continues to emphasize that equitable considerations should ease the path upon which the doctrinal bar travels. *See, e.g., Joel v. Morrocco,* 147 N.J. 546, 555, 688 A.2d 1036 (1997) (recognizing that "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair"). Preclusion should be a remedy of last resort. *Olds [v.Donnelly], supra,* 150 N.J.[424] at 446-47, 696 A.2d 633 [1997]. As the Court recently noted: "[t]he twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration." *Gelber [v. Zito Partnership], supra,* 147 N.J.[561] at 565, 688 A.2d 1044 [1997] (citing *Joel v. Morrocco,* 147 N.J. 546, 555, 688 A.2d 1036 (1997)). In considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant "had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Ibid.*

[*K-Land, supra,* 173 N.J. at 72-73, 800 A.2d 861 (quoting *Hillsborough,* 321 N.J.Super. at 284, 728 A.2d 857 (footnote omitted)).]

*356 Applying these principles to *K-Land,* the Court reversed because "the Appellate Division did not focus sufficiently on considerations of fairness." *Id. at 74,* 800 A.2d 861. "This record simply does not support the conclusion that when the declaratory judgment suit was filed negotiations between K-Land and [the Authority] were so adverse that litigation was K-Land's only recourse." 173 N.J. at 75, 800 A.2d 861.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

835 A.2d 1257  
364 N.J.Super. 351, 835 A.2d 1257  
**(Cite as: 364 N.J.Super. 351, 835 A.2d 1257)**

In the case before us, the April 2001 Motion and the October 2001 motion were not "claims" in lawsuits Burke filed against Stover. They were motions in aid of litigant's rights under *R.* 1:10-3. The "claims" to which *R.* 4:30A speaks were contained in the 1994 complaint that gave rise to the 1996 consent order and the 1999 revised consent order.

Enforcement of orders within ongoing litigation is a fluid situation. Court orders are executory in nature. The ability and responsibility of a court to enforce its own orders should not be precluded by a mechanistic application of a claim preclusion doctrine. In this context there is no violation of the principle that all related claims should be resolved in a single litigation. This is a single litigation, in which the parties have expressly agreed in their consent orders to vest the court with continuing jurisdiction to enforce the orders.

Concerns of party fairness are not necessarily offended by allowing a party to seek enforcement of different provisions in an order at different times. A party may have many reasons to forego enforcement **1261 action regarding a particular issue. For example, the party may not want to incur the expense or waste the court's time, or the party may be willing "to live with" the problem or may be hopeful that the problem will be resolved. Later, after seeking enforcement for a more significant violation of the order, the party should not be automatically precluded from raising the earlier issue if it continues to fester or worsens. This result would advance neither fairness nor judicial economy and efficiency.

*357[2] We hold that the entire controversy doctrine does not apply to post-judgment motions to enforce litigant's rights. On remand, Stover may again assert waiver, accord and satisfaction, laches, and estoppel, or any other basis upon which Burke's motion might be subject to preclusion. We do not suggest that our holding immunizes a party from challenge to bringing serial enforcement motions. The result will in each case be fact-sensitive. We merely hold there is no automatic preclusion.

Reversed and remanded. We do not retain jurisdiction.

N.J.Super.A.D.,2003.  
Irish Pub v. Stover  
364 N.J.Super. 351, 835 A.2d 1257

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.